Jonathan S. Henes
Joshua A. Sussberg
Sarah Hiltz Seewer (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Proposed Attorneys for the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CITADEL BROADCASTING CORPORATION, *et al.*, | ) | Case No. 09-17442 (___) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF**
**AN ORDER AUTHORIZING AND APPROVING THE**
**EMPLOYMENT AND RETENTION OF KURTZMAN CARSON**
**CONSULTANTS LLC AS NOTICE AND CLAIMS AGENT FOR THE DEBTORS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Citadel Broadcasting Corporation ("***Citadel***") and its debtor affiliates, as debtors and

debtors in possession (collectively, the "***Debtors***"), [1] respectfully represent:

---

[1]    The Debtors in these chapter 11 cases are:  Alphabet Acquisition Corp.; Atlanta Radio, LLC; Aviation I, LLC; Chicago FM Radio Assets, LLC; Chicago License, LLC; Chicago Radio Assets, LLC; Chicago Radio Holding, LLC; Chicago Radio, LLC; Citadel Broadcasting Company; Citadel Broadcasting Corporation; DC Radio Assets, LLC; DC Radio, LLC; Detroit Radio, LLC; International Radio, Inc.; KLOS Radio, LLC; KLOS Syndications Assets, LLC; KLOS-FM Radio Assets, LLC; LA License, LLC; LA Radio, LLC; Minneapolis Radio Assets, LLC; Minneapolis Radio, LLC; Network License, LLC; NY License, LLC; NY Radio Assets, LLC; NY Radio, LLC; Oklahoma Radio Partners, LLC; Radio Assets, LLC; Radio License Holding I, LLC; Radio License Holding II, LLC; Radio License Holding III, LLC; Radio License Holding IV, LLC; Radio License Holding V, LLC; Radio License Holding VI, LLC; Radio License Holding VII, LLC; Radio License Holding VIII, LLC; Radio License Holding IX, LLC; Radio License Holding X, LLC; Radio License Holding XI, LLC; Radio License Holding XII, LLC; Radio Networks, LLC; Radio Today Entertainment, Inc.; Radio Watermark, Inc.; San Francisco Radio Assets, LLC; San Francisco Radio, LLC; SF License, LLC; WBAP-KSCS Acquisition Partner, LLC; WBAP-KSCS Assets, LLC; WBAP-KSCS Radio Acquisition, LLC; WBAP-KSCS Radio Group, Ltd.; and WPLJ Radio, LLC.  The principal corporate locations of the Debtors are:  142 West 57th Street, 11th Floor, New York, New York 10019; and 7201 W. Lake Mead Blvd., Suite 400,

## Relief Requested

1.      By this application, the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the employment and retention of Kurtzman Carson Consultants LLC ("***KCC***") as the Debtors' noticing and claims agent in accordance with the terms and conditions set forth in the Services Agreement (as defined below); and (b) providing that the fees and expenses incurred by KCC are administrative in nature and, therefore, not subject to the standard fee application procedures of professionals in these chapter 11 cases. In support of the application, the Debtors submit the Declaration of Michael J. Frishberg, Vice President of Corporate Restructuring Services (the "***Frishberg Declaration***"), which is attached hereto as **Exhibit B**.

## Basis for Relief

2.      The Debtors estimate they have more than 10,000 potential creditors.  Although the office of the Clerk of the United States Bankruptcy Court for the Southern District of New York (the "***Clerk's Office***") ordinarily would serve notice on the Debtors' creditors and other parties in interest and administer claims against the Debtors, the Clerk's Office may not have the resources to undertake such tasks, especially in light of the sheer magnitude of the Debtors' creditor body and the tight timelines that frequently arise in chapter 11 cases.

3.      Accordingly, the Debtors propose to engage KCC to act as the notice and claims agent in these chapter 11 cases, and they respectfully submit that this retention is the most

---

Las Vegas, Nevada 89128.  The service address for all of the Debtors is 7201 W. Lake Mead Blvd., Suite 400, Las Vegas, Nevada 89128.  Information regarding the Debtors' business and the background of these chapter 11 cases can be found in the Declaration of Randy L. Taylor Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Pleadings (the "***First Day Declaration***"), filed on December 20, 2009, the date the Debtors filed their petitions (the "***Petition Date***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").

effective and efficient manner of noticing the thousands of creditors and parties in interest of the filing of the Debtors' chapter 11 cases and other developments in the chapter 11 cases.

## I.     KCC's Qualifications

4.     As a specialist in legal administration services, KCC provides comprehensive solutions to design legal notice programs and manage claims issues for chapter 11 cases. With respect to chapter 11 case management, KCC specializes in noticing, claims processing and other administrative tasks necessary to operate chapter 11 cases effectively. KCC is one of the country's leading chapter 11 administrators, with substantial experience in matters of this size and complexity. Indeed, KCC has acted as the official notice and claims agent in many large bankruptcy cases pending in this and other districts nationwide. *See*, *e.g.*, *In re The Reader's Digest Ass'n, Inc.*, Case No. 09-23529 (Bankr. S.D.N.Y. Aug. 28, 2009); *In re Lear Corp.*, Case No. 09-14326 (Bankr. S.D.N.Y. July 7, 2009); *In re ION Media Networks, Inc.*, Case No. 09-13125 (Bankr. S.D.N.Y. May 21, 2009); *In re Charter Comm'ns, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. Mar. 30, 2009); *In re Tronox, Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Jan. 13, 2009); *In re Paper Int'l, Inc.*, Case No. 08-13917 (Bankr. S.D.N.Y. Oct. 10, 2008); *In re Oneida Ltd.*, Case No. 06-10489 (Bankr. S.D.N.Y. Apr. 6, 2006); *In re Recycled Paper Greetings, Inc.*, Case No. 09-10002 (Bankr. D. Del. Jan. 5, 2009); *In re VeraSun Energy Corp.*, Case No. 08-12606 (Bankr. D. Del. Nov. 4, 2008).

## II.     Services to Be Provided

5.     The Debtors request the employment and retention of KCC to render noticing and claims processing under the terms of that certain services agreement between Citadel and KCC dated September 3, 2009 (the "***Services Agreement***," a copy of which is attached hereto as **Exhibit C**). At the request of the Debtors or the Clerk's Office, KCC will provide, among other things, the following administrative services to the Debtors:

(a)     Notifying all potential creditors of the filing of the bankruptcy petitions and of the setting of the first meeting of creditors, pursuant to section 341(a) of the Bankruptcy Code, under the proper provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") as determined by Debtors' counsel;

(b)     Preparing and serving required notices in these chapter 11 cases, including:

    (i)     a notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

    (ii)     notices of objections to claims (if necessary);

    (iii)     notices of any hearings on a disclosure statement and confirmation of a plan or plans of reorganization; and

    (iv)     such other miscellaneous notices as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(c)     Maintaining an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

(d)     Providing access to the public for examination of copies of the proofs of claim or proofs of interest filed in these chapter 11 cases without charge during regular business hours (if necessary);

(e)     Furnishing a notice of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court;

(f)     Filing with the Clerk's Office an affidavit or certificate of service which includes a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date and manner mailed, within ten (10) days of service;

(g)     Docketing all claims received by the Clerk's Office, maintain the official claims registers (the "**Claims Registers**") for each Debtor on behalf of the Clerk's Office, and provide the Clerk's Office with certified duplicate, unofficial Claims Registers on a monthly basis, unless otherwise directed;

(h)     Recording all transfers of claims, pursuant to Bankruptcy Rule 3001(e), and provide any notices of such transfers required by Bankruptcy Rule 3001(e);

(i)     Specifying, in the applicable Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification(s) of the claim (*e.g.*, secured, unsecured, priority and the like);

(j)     Relocating, by messenger, all of the actual proofs of claim filed with the Court to KCC, not less than weekly;

(k)     Upon completion of the docketing process for all claims received to date by the Clerk's Office for each case, turn over to the Clerk's Office copies of the Claims Register for the Clerk's Office's review;

(l)     Making changes in the Claims Registers pursuant to Court Order;

(m)     Maintaining the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party in interest or the Clerk's Office;

(n)     Assisting with, among other things, solicitation and calculation of votes and distribution as required in furtherance of confirmation of plan(s) of reorganization;

(o)     Providing such other claims processing, noticing and administrative services as may be requested from time to time by the Debtors;

(p)     Filing with the Court the final version of the Claims Register immediately before the closing of these chapter 11 cases;

(q)     Thirty (30) days prior to the close of these cases, an Order dismissing KCC shall be submitted terminating the services of KCC upon completion of its duties and responsibilities and upon the closing of these cases; and

(r)     At the close of the case, box and transport all original documents, in proper format, as provided by the Clerk's Office, to the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064.

6.     In addition to the foregoing, KCC will assist the Debtors with, among other things: (a) maintaining and updating the master mailing lists of creditors; (b) gathering data in conjunction with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs; (c) tracking and administration of claims; and (d) performing other administrative tasks pertaining to the administration of these chapter 11 cases as may be

requested by the Debtors or the Clerk's Office in accordance with the terms of the Services Agreement.

## III.    Compensation

7.    The fees KCC will charge in connection with its services to the Debtors are set forth in the Services Agreement.  The Debtors respectfully submit that KCC's rates are competitive and comparable to the rates KCC's competitors charge for similar services.  Indeed, the Debtors conducted a review and competitive comparison of two other firms and reviewed the rates of two other firms prior to selecting KCC as agent in accordance with the terms of the Court's protocol for the retention of claims agents.  The Debtors believe KCC's rates are reasonable given the quality of KCC's services and KCC's prior bankruptcy expertise.  The Debtors paid KCC a retainer of $50,000.00 on or around September 4th, 2009.  Additionally, KCC will seek reimbursement from the Debtors for reasonable expenses in accordance with the terms of the Service Agreement.

8.    The fees and expenses incurred by virtue of KCC performing the services described above shall be administrative expenses of the Debtors' chapter 11 estates and shall be paid by the Debtors in the ordinary course in accordance with the Services Agreement upon receipt of an invoice from KCC (which shall also be delivered to counsel to the informal group of first lien holders) unless KCC is advised — within 30 days of receipt of the invoice — that the Debtors object to the invoice, in which case (unless the objection is resolved consensually) the Debtors will schedule a hearing before the Court to consider the disputed invoice.  In such case, the Debtors shall remit to KCC only the undisputed portion of the invoice and, if applicable, shall pay the remainder to KCC upon resolution by the Court with respect to the disputed portion.  Notwithstanding the foregoing, KCC may require prepayment from the Debtors under certain circumstances as set forth in the Services Agreement.

9.     KCC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of section 156(c) of title 28 of the United States Code.

## IV.    Indemnification

10.     As part of the overall compensation payable to KCC under the terms of the Services Agreement, the Debtors have agreed to certain indemnification obligations.  The Services Agreement provides that the Debtors will indemnify and hold harmless KCC and its affiliates, members, directors, officers, employees, consultants, subcontractors and agents under certain circumstances specified in the Services Agreement, except in circumstances of gross negligence or willful misconduct.  Both the Debtors and KCC believe that such provisions are customary and reasonable for notice and claims agents in chapter 11 cases.

## V.    KCC's Disinterestedness

11.     The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors.  KCC has not and will not represent the separate interests of any such creditor in these cases.  Additionally, KCC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors.  For example, one or more of KCC's employees may have obligations outstanding with financial institutions that are creditors of the Debtors or may have used the Debtors' services.

12.     Although the Debtors do not propose to retain KCC under section 327 of the Bankruptcy Code, KCC has reviewed its electronic database and, to the best of its knowledge and except to the extent disclosed herein and in the Frishberg Declaration, KCC does not (a) hold or represent an interest materially adverse to the Debtors' estates or (b) have any materially adverse connection to the Debtors, their creditors or other relevant parties.

13.     To the extent that KCC discovers any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to supplement the Frishberg Declaration.

14.     In connection with its retention as notice and claims agent, KCC represents, among other things, that:

    (a)     KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the notice and claims agent in these chapter 11 cases;

    (b)     By accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government;

    (c)     In its capacity as the notice and claims agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States; and

    (d)     KCC will not employ any past or present employees of the Debtors in connection with its work as the notice and claims agent in these chapter 11 cases.

### **Supporting Authority**

15.     Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

16.     In addition, Rule 5075-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***") provides, in relevant part, as follows:

> (a)  The Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

S.D.N.Y. LBR 5075-1.

17.     To help manage notice and other administrative tasks with respect to the thousands of creditors, equity security holders and other parties in interest that are expected to be involved in the Debtors' chapter 11 cases, the Debtors seek an order appointing KCC as the notice and claims agent in these chapter 11 cases pursuant to both 28 U.S.C. § 156(c) and Local Rule 5075-1 to relieve the Court and the Clerk's Office of these heavy administrative burdens.

18.     Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by KCC under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals. Courts in this district and others have recognized the efficacy of appointing KCC as notice and claims agent and compensating them on an administrative priority basis as proposed herein. *See*, *e.g.*, *In re The Reader's Digest Ass'n, Inc.*, Case No. 09-23529 (Bankr. S.D.N.Y. Aug. 28, 2009); *In re Lear Corp.*, Case No. 09-14326 (Bankr. S.D.N.Y. July 7, 2009); *In re ION Media Networks, Inc.*, Case No. 09-13125 (Bankr. S.D.N.Y. May 21, 2009); *In re Charter Comm'ns, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. Mar. 30, 2009); *In re Tronox, Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Jan. 13, 2009); *In re Paper Int'l, Inc.*, Case No. 08-13917 (Bankr. S.D.N.Y. Oct. 10, 2008); *In re Oneida Ltd.*, Case No. 06-10489 (Bankr. S.D.N.Y.

Apr. 6, 2006); *In re Recycled Paper Greetings, Inc.*, Case No. 09-10002 (Bankr. D. Del. Jan. 5, 2009); *In re VeraSun Energy Corp.*, Case No. 08-12606 (Bankr. D. Del. Nov. 4, 2008).

19.     In connection with the retention of notice and claims agents in chapter 11 cases, the Court has promulgated a protocol "to ensure the use of competitive process in the selection of claims agents in instances where the Court has authorized such use under 28 U.S.C. § 156(c)." S.D.N.Y. Protocol For The Employment Of Claims Agents (Bankr. S.D.N.Y. Jan. 23, 2008) (the "***Claims Agents Protocol***").

20.     In compliance with the Claims Agents Protocol, the Debtors obtained and reviewed engagement proposals from four court-approved notice and claims agents.  First, the Debtors provided each of the four potential notice and claims agents with basic facts about the Debtors' case and asked each notice and claims agent to submit a written proposal based on the facts.  The Debtors' corresponded with the candidate firms and asked each case-specific pricing questions.  In the end, the Debtors chose KCC as their notice and claims agent based on KCC's superior capability and price terms.

### Jurisdiction

21.     Pursuant to 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.), the Court has jurisdiction to consider and grant the relief requested herein.  A proceeding to consider and grant such relief is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Motion Practice

22.     This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion.  Moreover, in addition to all entities otherwise entitled to receive notice, the Debtors

have given notice of this motion to all entities believed to have or be claiming an interest in the subject matter of the proposed order or who, it is believed, otherwise would be affected by the proposed order. Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1.

## Notice

23.     No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agent under the Debtors' prepetition secured term loan; (d) the indenture trustees for the Debtors' prepetition 8.0% and original Convertible Subordinated Notes; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the Federal Communications Commission. A copy of the motion is also available on the website of the Debtors' notice and claims agent, Kurtzman Carson Consultants LLC, at http://www.kccllc.net/citadel. The Debtors respectfully submit that no other or further notice need be provided.

## No Prior Request

24.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

New York, New York
Dated:  December 20, 2009

Randy L. Taylor
Chief Financial Officer

# **EXHIBIT A**

## **Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CITADEL BROADCASTING CORPORATION, *et al.*, | Case No. 09-17442 (___) |
| Debtors. | Joint Administration Requested |

## ORDER AUTHORIZING AND
## APPROVING THE RETENTION OF
## KURTZMAN CARSON CONSULTANTS LLC
## AS NOTICE AND CLAIMS AGENT TO THE DEBTORS

Upon the motion (the "***Motion***")[1] of Citadel Broadcasting Corporation ("***Citadel***") and its

debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"),[2] for entry of

an order (this "***Order***") authorizing the retention of Kurtzman Carson Consultants LLC

("***KCC***") as its notice and claims agent, all as more fully described in the Application; and the

Court having jurisdiction to consider this Application and the relief requested therein in

accordance with 28 U.S.C §§ 157 and 1334 and the Standing Order M-61 Referring Bankruptcy

Judge for the Southern District of New York Any and All Proceedings Under Title 11, dated July

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

[2] The Debtors in these chapter 11 cases are: Alphabet Acquisition Corp.; Atlanta Radio, LLC; Aviation I, LLC; Chicago FM Radio Assets, LLC; Chicago License, LLC; Chicago Radio Assets, LLC; Chicago Radio Holding, LLC; Chicago Radio, LLC; Citadel Broadcasting Company; Citadel Broadcasting Corporation; DC Radio Assets, LLC; DC Radio, LLC; Detroit Radio, LLC; International Radio, Inc.; KLOS Radio, LLC; KLOS Syndications Assets, LLC; KLOS-FM Radio Assets, LLC; LA License, LLC; LA Radio, LLC; Minneapolis Radio Assets, LLC; Minneapolis Radio, LLC; Network License, LLC; NY License, LLC; NY Radio Assets, LLC; NY Radio, LLC; Oklahoma Radio Partners, LLC; Radio Assets, LLC; Radio License Holding I, LLC; Radio License Holding II, LLC; Radio License Holding III, LLC; Radio License Holding IV, LLC; Radio License Holding V, LLC; Radio License Holding VI, LLC; Radio License Holding VII, LLC; Radio License Holding VIII, LLC; Radio License Holding IX, LLC; Radio License Holding X, LLC; Radio License Holding XI, LLC; Radio License Holding XII, LLC; Radio Networks, LLC; Radio Today Entertainment, Inc.; Radio Watermark, Inc.; San Francisco Radio Assets, LLC; San Francisco Radio, LLC; SF License, LLC; WBAP-KSCS Acquisition Partner, LLC; WBAP-KSCS Assets, LLC; WBAP-KSCS Radio Acquisition, LLC; WBAP-KSCS Radio Group, Ltd.; and WPLJ Radio, LLC. The principal corporate locations of the Debtors are: 142 West 57th Street, 11th Floor, New York, New York 10019; and 7201 W. Lake Mead Blvd., Suite 400, Las Vegas, Nevada 89128. The service address for all of the Debtors is 7201 W. Lake Mead Blvd., Suite 400, Las Vegas, Nevada 89128.

10, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Application (the "*Hearing*"); and upon the Declaration of Randy L. Taylor Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Pleadings, sworn to on December 20, 2009, the record of the Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.     The Application is approved to the extent provided herein.

2.     The Debtors are authorized to retain KCC as the notice and claims agent in these chapter 11 cases pursuant to that certain agreement for services, dated as of September 3, 2009, by and between Citadel and KCC (the "*Services Agreement*").

3.     KCC is authorized to render noticing and claims processing services as set forth in the Application, the Services Agreement and this Order, which include, without limitation, the following:

(e)     Notify all potential creditors of the filing of the bankruptcy petitions and of the setting of the first meeting of creditors, pursuant to section 341(a) of the Bankruptcy Code, under the proper provisions of the Bankruptcy Code and the Bankruptcy Rules as determined by Debtors' counsel;

(f)     Prepare and serve required notices in these chapter 11 cases, including:

(i)      a notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

(ii)     notices of objections to claims (if necessary);

(iii)    notices of any hearings on a disclosure statement and confirmation of a plan or plans of reorganization; and

(iv)    such other miscellaneous notices as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(g)    Maintain an official copy of the Debtor(s)' schedules of assets and liabilities and statement of financial affairs (collectively, the "*Schedules*"), listing the Debtors' known creditors and the amounts owed thereto;

(h)    Provide access to the public for examination of copies of the proofs of claim or proofs of interest filed in these chapter 11 cases without charge during regular business hours (if necessary);

(i)    Furnish a notice of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court;

(j)    File with the Clerk's Office an affidavit or certificate of service which includes a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date and manner mailed, within ten (10) days of service;

(k)    Docket all claims received by the Clerk's Office, maintain the official claims registers (the "*Claims Registers*") for each Debtor on behalf of the Clerk's Office, and provide the Clerk's Office with certified duplicate, unofficial Claims Registers on a monthly basis, unless otherwise directed;

(l)    Record all transfers of claims, pursuant to Bankruptcy Rule 3001(e), and provide any notices of such transfers required by Bankruptcy Rule 3001(e);

(m)    Specify, in the applicable Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification(s) of the claim (*e.g.*, secured, unsecured, priority, and the like);

(n)    Relocate, by messenger, all of the actual proofs of claim filed with the Court to KCC, not less than weekly;

(o)     Upon completion of the docketing process for all claims received to date by the Clerk's Office for each case, turn over to the Clerk's Office copies of the Claims Register for the Clerk's Office's review;

(p)     Make changes in the Claims Registers pursuant to Court Order;

(q)     Maintain the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party in interest or the Clerk's Office;

(r)     Assist with, among other things, solicitation and calculation of votes and distribution as required in furtherance of confirmation of plan(s) of reorganization;

(s)     Provide such other claims processing, noticing and administrative services as may be requested from time to time by the Debtors;

(t)     File with the Court the final version of the Claims Register immediately before the closing of these chapter 11 cases;

(u)     Thirty (30) days prior to the close of these cases, an Order dismissing KCC shall be submitted terminating the services of KCC upon completion of its duties and responsibilities and upon the closing of these cases; and

(v)     At the close of the case, box and transport all original documents, in proper format, as provided by the Clerk's Office, to the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064.

4.      In addition to the foregoing, KCC is authorized to assist with, among other things: (a) maintaining and updating the master mailing lists of creditors; (b) gathering data in conjunction with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs; (c) tracking and administration of claims; and (d) performing other administrative tasks pertaining to the administration of these chapter 11 cases as may be requested by the Debtors or the Clerk's Office in accordance with the terms of the Services Agreement.

5.      The Debtors are authorized to pay KCC's fees and expenses as set forth in the Services Agreement in the ordinary course of business without the necessity of KCC filing fee applications with this Court.

6.  Without further Order of the Court, the Debtors are authorized to compensate KCC in accordance with the terms and conditions of the Services Agreement, upon KCC's submission to the Debtors of invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith. The fees and expenses of KCC incurred in performance of these services are to be treated as an administrative expense of the Debtors' estates and shall be paid by the Debtors upon receipt of each invoice from KCC, unless KCC is advised, within 30 days of receipt of the invoice, that the Debtors object to the invoice, in which case (unless the objection is resolved consensually) the Debtors will schedule a hearing before the Court to consider the disputed invoice. In such case, the Debtors shall remit to KCC only the undisputed portion of the invoice and, if applicable, shall pay the remainder to KCC upon the resolution of the disputed portion, as mandated by this Court. Notwithstanding the foregoing, the Debtors may be required to prepay for certain services in accordance with the terms of the Services Agreement.

7.  In the event KCC is unable to provide the services set out in this Order, KCC will immediately notify the Clerk's Office and Debtors' counsel and cause to have all original proofs of claim and computer information turned over to another claims agent with the advice and consent of the Clerk's Office and Debtors' counsel.

8.  If these cases convert to cases under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services until the claims filed in the chapter 11 cases have been completely processed; if claims agent representation is necessary in the converted chapter 7 case, KCC will continue to be paid in accordance with 28 U.S.C. §156(c) under the terms set out in the Services Agreement and this Order.

9. The Debtors and KCC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

10. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12. The requirement set forth in Local Rule 9013-1(b) that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application or otherwise waived.

13. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Application in these cases, the terms of this Order shall govern.

14. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: _____, 2009        _____
                                          United States Bankruptcy Judge

**<u>EXHIBIT B</u>**

**Frishberg Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CITADEL BROADCASTING CORPORATION, *et al.*, | ) Case No. 09-17442 (___) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## DECLARATION OF MICHAEL J. FRISHBERG IN SUPPORT OF THE APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS NOTICE AND CLAIMS AGENT TO THE DEBTORS

I, Michael J. Frishberg, being duly sworn, hereby deposes and says:

1.     I am the Vice President of Corporate Restructuring Services of Kurtzman Carson Consultants LLC ("KCC"), whose offices are located at 2335 Alaska Avenue, El Segundo, California 90245, telephone number (310) 823-9000.  The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.     This Declaration is made in support of the Debtors' Application for an Order Authorizing and Approving the Retention of Kurtzman Carson Consultants LLC as Notice and Claims Agent for the above captioned Debtors (collectively, the "***Debtors***"),[1] which has been filed contemporaneously herewith (the "***Application***").[2]

---

[1]   The Debtors in these chapter 11 cases are:  Alphabet Acquisition Corp.; Atlanta Radio, LLC; Aviation I, LLC; Chicago FM Radio Assets, LLC; Chicago License, LLC; Chicago Radio Assets, LLC; Chicago Radio Holding, LLC; Chicago Radio, LLC; Citadel Broadcasting Company; Citadel Broadcasting Corporation; DC Radio Assets, LLC; DC Radio, LLC; Detroit Radio, LLC; International Radio, Inc.; KLOS Radio, LLC; KLOS Syndications Assets, LLC; KLOS-FM Radio Assets, LLC; LA License, LLC; LA Radio, LLC; Minneapolis Radio Assets, LLC; Minneapolis Radio, LLC; Network License, LLC; NY License, LLC; NY Radio Assets, LLC; NY Radio, LLC; Oklahoma Radio Partners, LLC; Radio Assets, LLC; Radio License Holding I, LLC; Radio License Holding II, LLC; Radio License Holding III, LLC; Radio License Holding IV, LLC; Radio License Holding V, LLC; Radio License Holding VI, LLC; Radio License Holding VII, LLC; Radio License Holding VIII, LLC; Radio License Holding IX, LLC; Radio License Holding X, LLC; Radio License Holding XI, LLC; Radio License Holding XII, LLC; Radio Networks, LLC; Radio Today Entertainment, Inc.; Radio Watermark, Inc.; San Francisco Radio Assets, LLC; San Francisco Radio, LLC; SF License, LLC;

3.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), KCC will perform, at the request of the Office of the Clerk of the United States Bankruptcy Court for the Southern District of New York (the "***Clerk's Office***"), the noticing and claims related services specified in the Application.  In addition, at the Debtors' request, KCC will perform such other noticing, claims, technical and support services specified in the Application.

4.      KCC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation and facilitating other administrative aspects of chapter 11 cases.  KCC has substantial experience in matters of this size and complexity, and has acted as the official notice and claims agent in many large bankruptcy cases pending in this district and other districts nationwide.  *See*, *e.g.*, *In re The Reader's Digest Ass'n, Inc.*, Case No. 09-23529 (Bankr. S.D.N.Y. Aug. 28, 2009); *In re Lear Corp.*, Case No. 09-14326 (Bankr. S.D.N.Y. July 7, 2009); *In re ION Media Networks, Inc.*, Case No. 09-13125 (Bankr. S.D.N.Y. May 21, 2009); *In re Charter Comm'ns, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. Mar. 30, 2009); *In re Tronox, Inc.,* Case No. 09-10156 (Bankr. S.D.N.Y. Jan. 13, 2009); *In re Paper Int'l, Inc.,* Case No. 08-13917 (Bankr. S.D.N.Y. Oct. 10, 2008); *In re Oneida Ltd.*, Case No. 06-10489 (Bankr. S.D.N.Y. Apr. 6, 2006); *In re Recycled Paper Greetings, Inc.,* Case No. 09-10002 (Bankr. D. Del. Jan. 5, 2009); *In re VeraSun Energy Corp.,* Case No. 08-12606 (Bankr. D. Del. Nov. 4, 2008).

5.      KCC represents, among other things, the following:

---

WBAP-KSCS Acquisition Partner, LLC; WBAP-KSCS Assets, LLC; WBAP-KSCS Radio Acquisition, LLC; WBAP-KSCS Radio Group, Ltd.; and WPLJ Radio, LLC.  The principal corporate locations of the Debtors are:  142 West 57th Street, 11th Floor, New York, New York 10019; and 7201 W. Lake Mead Blvd., Suite 400, Las Vegas, Nevada 89128.  The service address for all of the Debtors is 7201 W. Lake Mead Blvd., Suite 400, Las Vegas, Nevada 89128.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

(a) KCC is not a creditor of the Debtors;

(b) KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the notice and claims agent in these chapter 11 cases;

(c) By accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government;

(d) In its capacity as the notice agent and claims agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(e) KCC will not employ any past or present employees of the Debtors in connection with its work as the notice and claims agent in these chapter 11 cases;

(f) In its capacity as notice and claims agent in these chapter 11 cases, KCC will not intentionally misrepresent any fact to any person;

(g) KCC shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers; and

(h) None of the services provided by KCC as notice and claims agent shall be at the expense of the Clerk's Office.

6.     The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors. KCC has not and will not represent the separate interests of any such creditor in these cases. Additionally, KCC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. For example, one or more of KCC's employees may have obligations outstanding with financial institutions that are creditors of the Debtors or may have used the Debtors services.

7.     KCC is an indirect subsidiary of Computershare Limited. Computershare Limited is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare Limited and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estates or any class of creditors

or equity security holders.  Administar, a claims and noticing agent, is also an indirect subsidiary of Computershare Limited.  On June 10, 2009, the marketing and operations of Administar's restructuring services were consolidated under KCC.

8. The Debtors have sought to retain Kirkland & Ellis LLP ("*K&E*") as counsel in these chapter 11 cases.  Jonathan A. Carson, who was employed as a K&E associate between 1999 and 2001, co-founded KCC and is currently Chief Marketing Officer and Managing Director of KCC.  Mr. Carson's work at K&E was unrelated to the Debtors or these chapter 11 cases.  In addition, I was a K&E partner prior to joining KCC in February 2008.  My work at K&E also was unrelated to the Debtors or these chapter 11 cases.  Further, Albert H. Kass, a former K&E associate, Isidro Panizales, a former K&E legal assistant, and Amber Cerveny, a former K&E legal assistant, presently work for KCC.  Mr. Kass', Mr. Panizales' and Ms. Cerveny's work at K&E also was unrelated to the Debtors or to these chapter 11 cases.

9. To the best of my knowledge and except as disclosed herein, KCC neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code.  KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

10. In performing the services of notice and claims agent, KCC will charge the Debtors the rates set forth in the Services Agreement, which is attached as **Exhibit C** to the Application.  The rates set forth therein are at least as favorable as the rates that KCC charges in cases in which it has been retained to perform similar services.

11.     KCC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

12.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 18, 2009
in Los Angeles, California.

Michael J. Frishberg
Vice President of Corporate Restructuring
Services
Kurtzman Carson Consultants LLC

# EXHIBIT C

## Services Agreement



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 3ʳᵈ day of September, 2009, between Citadel Broadcasting Corporation (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## Terms and Conditions

I.  SERVICES

A.  KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.  KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the KCC Fee Structure.

C.  Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.  The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part. Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders. Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.  The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement. The

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



## KCC AGREEMENT FOR SERVICES

parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

II.     PRICES, CHARGES AND PAYMENT

A.     KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect on the day such services and/or supplies are provided to the Company, in accordance with the KCC Fee Structure. KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment.

B.     Company agrees to pay fees set by KCC related to transportation, lodging, meals, publications, printing, postage and other third-party charges, in addition to the hourly consulting fees set forth in the KCC Fee Structure.

C.     In addition to all fees for services and expenses hereunder, Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.     Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.     KCC agrees to submit its invoices to the Company monthly, provided, however, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment which will be due and payable upon demand and prior to the performance of services hereunder. Company agrees that the amount invoiced is due and payable upon its receipt of the invoice. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, notice shall be given to KCC within ~~ten (10)~~ thirty (30) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute.

F.     In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section

2



# KCC AGREEMENT FOR SERVICES

156(c) approving this Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G.     KCC shall receive a retainer in the amount of $50,000 for services to be performed and expenses to be incurred in this matter due upon execution of this Agreement. This shall be an "evergreen retainer;" invoices shall be drawn down from the retainer and Company's payments shall then be deposited into the retainer to return the retainer to its original $50,000.

## III.    RIGHTS OF OWNERSHIP

A.     The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.     Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for Company's use during and in connection with the services provided by KCC under this Agreement.

## IV.    NON-SOLICITATION

Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

## V.    CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.



# KCC AGREEMENT FOR SERVICES

VI.     SUSPENSION OF SERVICE AND TERMINATION

A.     This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined below).  As used herein, the term "Cause" means (i) gross negligence or wanton misconduct of KCC that causes serious and material harm to the Company's reorganization under Chapter 11 of the Bankruptcy Code or (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.     In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for an orderly transfer.  Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C.     Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  KCC may dispose of the data or media, and be reimbursed for the expense of such disposition, after giving the Company thirty (30) days' notice if the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days.  Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.     SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

4



# KCC AGREEMENT FOR SERVICES

VIII.   BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company. To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.   LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.   Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement, other than Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement. The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.   Except as provided herein, KCC's liability to Company or any person claiming through or under Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to Company for the portion of the particular work which gave rise to the alleged Loss. In no event shall KCC's liability to Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to Company and actually paid to KCC for the services contemplated under the Agreement. In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.   Company is responsible for the accuracy of the programs and data it or any Company Party submits for processing to KCC and for the output. Company agrees to initiate and maintain backup files that would allow Company to regenerate or duplicate all programs and data submitted by Company to KCC.

D.   Company agrees that except as set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

X.    FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.    INDEPENDENT CONTRACTORS

Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC
2335 Alaska Ave.
El Segundo, CA  90245
Attn: James Le
Tel: (310) 823-9000
Fax: (310) 823-9133

Citadel Broadcasting Corporation
7201 W. Lake Mead Blvd., Suite 400
Las Vegas, NV 89128
Attn:
Tel:  (702) 804-5200
Fax: (702) 804-8250

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or



KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of Company and an officer of KCC.

## XV.  ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by KCC to a wholly owned subsidiary of KCC.

## XVI.  ARBITRATION

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in the Los Angeles County, State of California.

## XVII.  ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: Michael J. Frishberg          DATE: 9/4/09
TITLE: VP, Corporate Restructuring Services

Citadel Broadcasting Corporation

BY:                               DATE: 9/4/09
TITLE:     Jacquelyn J. Orr
           General Counsel & VP

7