STROOCK & STROOCK & LAVAN LLP
Kristopher M. Hansen
Kenneth Pasquale
Brett Lawrence
Sayan Bhattacharyya
180 Maiden Lane
New York, NY 10038-4982
Tel:   (212) 806-5400
Fax:   (212) 806-6006

*Proposed Counsel for the Official Committee
of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               :
In re                                                          :   Chapter 11
                                                               :
CITADEL BROADCASTING CORP., *et al.*,[1]                       :   Case No. 09-17442 (BRL)
                                                               :
                                          Debtors.             :   (Jointly Administered)
                                                               :
---------------------------------------------------------------x

**APPLICATION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF CHANIN CAPITAL PARTNERS L.L.C. AS
FINANCIAL ADVISOR *NUNC PRO TUNC* TO JANUARY 19, 2010**

---

[1] Other debtor entities jointly administered with Citadel Broadcasting Corporation are the following: Alphabet Acquisition Corp., Atlanta Radio, LLC; Aviation I, LLC; Chicago FM Radio Assets, LLC; Chicago License, LLC; Chicago Radio Assets, LLC; Chicago Radio Holding, LLC; Chicago Radio, LLC; Citadel Broadcasting Company; Citadel Broadcasting Corporation; DC Radio Assets, LLC; DC Radio, LLC; Detroit Radio, LLC; International Radio, Inc; KLIS Radio, LLC; KLOS Syndications Assets, LLC; KLOS-FM Radio Assets, LLC; LA License, LLC; LA Radio, LLC; Minneapolis Radio Assets, LLC; Minneapolis Radio, LLC; Network License, LLC; NY License, LLC; NY Radio Assets, LLC; NY Radio, LLC; Oklahoma Radio Partners, LLC; Radio Assets, LLC; Radio License Holding I, LLC; Radio License Holding II, LLC; Radio License Holding III, LLC; Radio License Holding IV, LLC; Radio License Holding V, LLC; Radio License Holding VI, LLC; Radio License Holding VII, LLC; Radio License Holding VIII, LLC; Radio License Holding IX, LLC; Radio License Holding X, LLC; Radio License Holding XI, LLC; Radio License Holding XII, LLC; Radio Networks, LLC; Radio Today Entertainment, Inc., Radio Watermark, Inc.; San Francisco Radio Assets, LLC; San Francisco Radio, LLC; SF License, LLC; WBAP-KSCS Acquisition Partner, LLC; WBAP-KSCS Assets, LLC; WBAP-KSCS Radio Acquisition, LLC; WBAP-KSCS Radio Group, Ltd.; and WPLJ Radio, LLC. (collectively, the "**Debtors**").

TO THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors") hereby submits this application (this "Application"), pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), for the entry of an order authorizing the Committee to retain and employ Chanin Capital Partners L.L.C.("CCP"), the corporate parent of which is Duff & Phelps, LLC ("D&P"), *nunc pro tunc* to January 19, 2010, pursuant to the terms of that certain engagement letter, dated as of January 19, 2010, a copy of which is attached hereto as Exhibit A (the "Engagement Letter"), as financial advisor to the Committee in connection with the above-captioned Chapter 11 cases (the "Chapter 11 Cases"). In support of its Application, the Committee relies upon the Declaration of John P. Madden (the "Madden Declaration"), attached hereto as Exhibit B and incorporated herein by reference, and respectfully represents as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 328 and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rule 2014-1.

**BACKGROUND**

2. On December 20, 2009 (the "<u>Petition Date</u>"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, neither a trustee nor an examiner has been appointed in these Chapter 11 Cases.

3. On January 11, 2010 (the "<u>Committee Formation Date</u>"), the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed an unsecured creditors' committee pursuant to section 1102 of the Bankruptcy Code. The Committee consists of the following entities: (i) Wilmington Trust Company as Indenture Trustee for the 1.875% Convertible Subordinated Note due 2011 and the 8% Amended and Restated Convertible Subordinated Notes due 2011; (ii) The Walt Disney Company; and (iii) Zazove Associates, LLC (each a "<u>Member</u>" and, collectively, the "<u>Members</u>").

4. At a meeting of the Committee on January 15, 2010, the Committee selected Stroock as bankruptcy counsel to the Committee in connection with these Chapter 11 Cases. The Committee has appointed The Walt Disney Company as the Committee's chairman.

5. On January 19, 2010, the Committee duly voted to retain CCP as its financial advisor in connection with these Chapter 11 Cases.

6. On February 3, 2010, this Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (the "<u>Compensation Procedures Order</u>") [Docket No. 109].

## RELIEF REQUESTED

7. By this Application, the Committee seeks to employ CCP as its financial advisor *nunc pro tunc* to January 19, 2010, pursuant to the terms of the Engagement Letter. The Committee respectfully requests entry of an order pursuant to sections 328 and 1103(a) of the Bankruptcy Code approving the Engagement Letter, authorizing the payments contemplated thereunder, and authorizing CCP to perform those financial advisory services that will be necessary during these Chapter 11 Cases on behalf of, and for the benefit of, the Committee as more fully described below.

## RETENTION OF CCP

A. **Introduction**

8. The Committee submits this Application because of its need to retain a financial advisor to help guide it through the Debtors' reorganization efforts and to assist it in the tasks associated with negotiating and implementing the Debtors' plan of reorganization. The Committee determined that CCP's extensive experience and role as financial advisor to the Committee would best serve the interests of the Committee, its counsel and, by extension, the Debtors' unsecured creditors.

9. The Committee believes that CCP is well qualified and uniquely able to provide financial advisory services to it in these cases in an efficient manner. Moreover, CCP has advised debtors and creditors' committees in numerous restructuring transactions, including some of the largest and most complicated cases. The Committee submits that the services of CCP will complement, and not duplicate, the services of other of the Committee's professionals,

agents or advisors. Some of CCP's more prominent recent creditor committee representations were in the following chapter 11 cases:

>Allied Holdings
>Cable & Wireless USA, Inc.
>Champion Enterprises, Inc.
>Collins & Aikman Corporation
>Dura Automotive Systems, Inc.
>Global Power Equipment Group, Inc.
>Hayes Lemmerz International
>Immunicon Corporation
>ION Media Networks
>Philadelphia Newspapers
>Visteon Corporation
>Washington Group International

10. Pursuant to the Engagement Letter, it is expected that CCP will provide the following services to the Committee:

   a. Review and analyze the Debtors' operations, financial condition, cash flows, business plan, strategy, and operating forecasts;

   b. Assist in the determination of an appropriate post-emergence capital structure for the Debtors;

   c. Determine a theoretical range of values for the Debtors on a going concern basis;

   d. Review the Plan Support Agreement and assist the Committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring or Plan of Reorganization (the "Plan"), including the value of the securities, if any, that may be issued to the Committee under any such restructuring or Plan;

   e. Assist the Committee in monitoring any sales process and evaluating bids to purchase the Company;

   f. Analyze any merger, divestiture, joint-venture, or investment transaction;

5

g. Assist the Committee in analyzing any new debt and/or equity capital (including advice on the nature and terms of new securities);

h. Evaluate the Debtors' debt capacity;

i. If requested by the legal counsel to the Committee, prepare an expert report with respect to the valuation of the Debtors and provide expert testimony relating to such report as well as other financial matters arising in connection with the bankruptcy; and

j. Provide the Committee with other appropriate general restructuring advice and litigation support.

11. The Committee believes that CCP's employment is in the best interests of the Debtors and their estates and creditors. Because of CCP's extensive experience in corporate restructurings and business reorganizations as well as its familiarity with the Debtors' business operations, the Committee believes that CCP is exceptionally well qualified to serve as its financial advisors in these Chapter 11 Cases.

12. The Committee hereby requests that the Court approve CCP's retention *nunc pro tunc* to January 19, 2010. The Committee was unable to prepare and file a retention application prior to the date of this document due to (a) the amount of time necessary for CCP to process the volume of names required to be examined from a conflict of interest perspective, (b) the time necessary for the Committee to negotiate the terms of CCP's engagement, and (c) the need for CCP to provide immediate and necessary services to the Committee, which services include reviewing the Debtors' financial and operating information and analyzing various immediate issues confronting the Debtors and creditors in connection with the Debtors' restructuring, such as the Debtors' proposed cash collateral order and other "first day" motions. Accordingly, the Committee respectfully submits that the Committee's retention of CCP *nunc*

*pro tunc* to January 19, 2010 is appropriate and in the best interests of the Committee and the Debtors' creditors.

      B.      **The Terms of CCP's Engagement**

13. As described more fully in the Engagement Letter, CCP will be entitled to receive, as compensation for its services, a flat monthly rate of $175,000 and a cash restructuring transaction fee of $500,000. In addition, the Engagement Letter provides for the payment to CCP of a financing fee (if applicable) of 2.00% of any capital directly raised by CCP.

14. In addition, CCP will be entitled to seek reimbursement for reasonable and actual out of pocket expenses, including, but not limited to, travel costs, lodging, meals, research, telephone and facsimile, costs of reproduction, typing, computer usage, legal counsel and other direct expenses incurred in connection with CCP providing professional services to the Committee, as described in the Engagement Letter.

15. Subject to Court approval and pursuant to terms of the Engagement Letter, in connection with CCP's engagement to provide financial advisory services to the Committee, the Debtors shall indemnify and hold harmless CCP and its affiliates against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, defending any action, suit, proceedings or investigation, to the extent and in the manner provided in Schedule I to the Engagement Letter.

16. As described more fully in the Madden Declaration in support of the Application, the terms of the Engagement Letter are similar to the terms, both financial and

otherwise, agreed to by CCP and other financial advisory firms, both inside and outside of bankruptcy.

17. The terms of the Engagement Letter were negotiated between the Committee and CCP, and reflect the extensive work to be performed by CCP in these Chapter 11 Cases and the firm's financial advisory expertise.

18. In accordance with sections 328, 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court, CCP intends to apply to the Court, pursuant to the Compensation Procedures Order, for the payment of compensation for services rendered and reimbursement of actual and necessary expenses incurred in connection with professional services rendered on behalf of the Committee.

### C. The Application Should be Approved Pursuant to Section 328(a) of the Bankruptcy Code

19. The Committee seeks to retain CCP pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in part, that a committee, "with the court's approval, may employ or authorize the employment of a professional person under section…1103…on any reasonable terms and conditions of employment, including a retainer…." 11 U.S.C. § 328(a). Section 328 permits the compensation of professionals, including investment bankers and financial advisors, on terms that reflect the nature of their services and market conditions. As the Court of Appeals for the Fifth Circuit recognized in <u>Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)</u>, 123 F.3d 861 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was

8

worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862.

D. **CCP is a Disinterested Party**

20. To the best of the Committee's knowledge, information, and belief, and based upon the Madden Declaration, CCP is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. CCP's compliance with the requirements of section 504 of the Bankruptcy Code and Bankruptcy Rules 2014, 2016 and 5002 is set forth in greater detail in the Madden Declaration.

21. To the best of the Committee's knowledge, information, and belief, and as described in the Madden Declaration, CCP does not represent any of the Debtors' creditors or other parties to these Chapter 11 Cases, or their respective attorneys or accountants, in any matter that is adverse to the interests of the estates with respect to the Debtors, these Chapter 11 Cases or any matter that would impair CCP's ability to perform professional services for the Committee in an objective manner.

22. More specifically, as set forth in the Madden Declaration, CCP, its members and employees:

    a. are not creditors, equity security holders or insiders of the Debtors;

    b. are not and were not, within 2 years before the Petition Date, directors, officers, or employees of the Debtors; and

9

   c.  do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors for any other reason.

23. Based on the Madden Declaration, CCP has determined that none of its members or employees has any connection with the Debtors, their professional advisors, its creditors, members of the Committee or Office of the United States Trustee or any employee thereof, except as described on the list attached as <u>Exhibit B-3</u> to the Madden Declaration. Also, CCP represents, in unrelated matters, numerous entities, including entities listed on <u>Exhibit B-3</u> that buy and sell distressed debt of Chapter 11 debtors. Because distressed bank and note debt is actively traded in the commercial markets, CCP may be unaware of the actual holder of such debt at any given moment.

24. Contained in <u>Exhibit B-3</u> is a list of entities having current or recent relationships with D&P, with which CCP has established an ethical wall in these cases (i.e. no sharing of information, personnel and facilities).

25. To the extent CCP discovers any additional facts bearing upon matters described herein or its engagement by the Committee during the period of its employment, CCP will supplement the information contained in the Application and the Madden Declaration.

26. CCP has not been retained to assist any entity or person other than the Committee on matters relating to, or in connection with, the Debtors' Chapter 11 Cases. If this Court approves the proposed employment of CCP by the Committee, CCP will not accept any engagement or perform any service for any entity or person other than the Committee in these Chapter 11 Cases. CCP will, however, continue to provide professional services to, and engage

in commercial or professional relationships with, entities or persons that may be creditors of the Debtors or parties in interest in these Chapter 11 Cases; provided, however, that such services do not relate to, or have any connection with, these Chapter 11 Cases.

## MEMORANDUM OF LAW REQUIREMENT

27. Because the issues of law presented in the Application are addressed by the citations herein, the Committee respectfully submits that the requirement, pursuant to Local Bankruptcy Rule 9013-1(b), that all motions be accompanied by a written memorandum of law is satisfied.

## NOTICE

28. No trustee or examiner has been appointed in these Chapter 11 Cases. The Committee has provided notice of this Application to: (a) the Office of the United States Trustee, (b) counsel to the Debtors, (c) counsel to the Debtors' prepetition lenders, and (d) all parties entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor submits that no further notice is required or needed under the circumstances.

## NO PRIOR REQUEST

29. The Committee has not previously sought the relief requested herein from this or any other Court.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Committee requests that this Court enter the Order in the form annexed hereto as Exhibit C (i) authorizing the Committee to employ and retain CCP as financial advisor in connection with these Chapter 11 Cases *nunc pro tunc* to January 19, 2010, (ii) authorizing the payment and reimbursement of CCP's fees and disbursements, subject to interim and final allowance thereof in accordance Sections 330 and 331 of the Bankruptcy Code and the Compensations Procedures Order or as otherwise ordered by the Court, and (iii) providing the Committee such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       February 18, 2010

**CHAIRMAN OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _____
Name: Alec M. Lipkind
Title: Vice President, Counsel
      The Walt Disney Company